# Exhibit "3"

# Moore Deposition Transcript Excerpt

```
 1                 UNITED STATES DISTRICT COURT

 2                       DISTRICT OF NEVADA

 3
     DARLENE CARTER, an                )
 4   individual; and DAVID BIANCO,     )
     an individual,                    )
 5                                     )
                   Plaintiffs,         )
 6                                     )
                vs.                    )  Case No.
 7                                     )  2:19-cv-01779-APG-BNW
     LIBERTY MUTUAL INSURANCE, a       )
 8   foreign entity; LIBERTY           )
     INSURANCE CORPORATION, a          )
 9   foreign corporation; DOES I-X;    )
     ROE CORPORATIONS I-X,             )
10   inclusive,                        )
                                       )
11                 Defendants.         )
                                       )
12

13

14

15

16
              DEPOSITION OF JOANNA MOORE, VOLUME II
17
                     APPEARING REMOTELY FROM
18
                    ORANGE COUNTY, CALIFORNIA
19
                   On Thursday, January 21, 2021
20                         At 9:04 a.m.

21

22

23   Job No. 710892

24   Reported by:  Mickey Chan, CCR No. 928, RPR

25   APPEARING REMOTELY FROM CLARK COUNTY, NEVADA
```

Page 110

1 I'm posing to you. My question is, is it your opinion that
2 only if the plaintiffs are fully compensated would they have
3 a duty to repair the home to protect it?
4     A.   No. And that hasn't been the case. As I
5 mentioned, they put the roof on and have saved up money to
6 do the windows, and that's what I recall from her testimony.
7     Q.   Okay. Now, with regard to -- with regard to your
8 evaluation and analysis in this matter, you have not
9 identified any amounts that you have concluded are required
10 for additional repairs; is that true?
11     A.   No. That's outside of my area of my expertise.
12 No.
13     Q.   And you have not done any analysis of any
14 benefits, in terms of a specific dollar amount, that could
15 be owed; is that true?
16     A.   That's true. I -- I mentioned earlier, I don't
17 believe the personal property contents claim, based on my
18 review of the documents, has been resolved, but I don't have
19 a dollar amount, that is correct.
20     Q.   And you have not attempted to apply any of the
21 specific policy terms in this particular policy to any of
22 the facts in this matter; is that true?
23     A.   No. I would not -- I wouldn't say that. I mean,
24 I think that, you know, the policy terms relative to a
25 homeowner claim explaining coverages, benefits, that kind of

Page 111

1 thing, I mean, I have included that in my report, so I would
2 not -- I would not say that's the case.
3     Q.   You have not included in your report any citation
4 or quote of any of the policy terms, though. We agreed on
5 that before, right?
6     A.   Right. I'm speaking in general terms of an
7 obligation under a homeowner claim.
8     Q.   Okay. And so you certainly have not included, in
9 any of your reports, any analysis or evaluation to compare
10 or apply the express policy terms at issue here to the facts
11 of this circumstance. Do you agree?
12     MR. MACK: Form.
13     THE WITNESS: Other than in general, no. I
14 haven't taken the policy terms and quoted that anywhere in
15 the report. I just have been speaking of my experience in
16 general.
17 BY MR. GREEN:
18     Q.   Okay. But your reports did not include any
19 reference to the policy terms, whether by quote, cite, or
20 even reference to the policy, true?
21     A.   No. Other than in what may have been provided for
22 my review. I didn't include it in the content of the
23 report, no.
24     Q.   Okay. For the purpose of what happened here for
25 this home, if Liberty simply analyzed the conditions and

Page 112

1 what repairs were required and whether the circumstances
2 were such that benefits were owed, and Liberty paid those
3 benefits, and the amount they paid was appropriate, would
4 you have any criticisms of Liberty if that's what it had
5 done?
6     MR. MACK: Form.
7     THE WITNESS: Well, that's a hypothetical that I
8 can't answer because that's not what happened, so, you know,
9 I -- unfortunately, mind reading is not one of my gifts, so
10 I don't know if that would have been acceptable or not.
11 BY MR. GREEN:
12     Q.   And I apologize, and I'm going to press you on
13 this issue.
14     A.   That's okay.
15     Q.   You are -- you are being presented as an expert in
16 this matter with regard to these insurance issues, and it's
17 generally within the scope of appropriate discovery about
18 how you would respond to hypotheticals, and so the reason I
19 put that hypothetical to you is to find out what your
20 opinion would be in that instance. And so to follow up that
21 question, are you saying you can't know if you would have an
22 opinion in that circumstance?
23     MR. MACK: Form.
24     THE WITNESS: No. I think it would depend on the
25 facts of the situation.

Page 113

1 BY MR. GREEN:
2     Q.   In the facts of my hypothetical, would you have
3 any criticisms of Liberty?
4     MR. MACK: Form.
5     THE WITNESS: Well, you know, I -- I just cannot
6 answer that question because are you talking about this
7 claim or are you talking about any claim, every claim? And
8 it also depends on the insurance contract at issue.
9     You know, if -- if the insurance contract says
10 that we can repair or replace an item, and their policies
11 and procedures are that they don't involve a mortgage
12 company, they cut you a check and they're very specific
13 about how they handle any supplemental or unknown damages,
14 then that may be perfectly fine. But that's not what
15 happened here, so that's my best answer.
16 BY MR. GREEN:
17     Q.   Okay. And the difference between my hypothetical
18 and what happened here was that Liberty did things to, in
19 your mind, create an expectation by the plaintiffs that
20 Liberty was going to make sure that the repairs were done
21 properly and completely, to the satisfaction of the
22 plaintiffs, that's the difference?
23     A.   That's the difference, yes.
24     Q.   Okay. Now, with regard to -- with regard to
25 dwelling damage claims for homeowner policies, have you