UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARLENE CARTER and DAVID BIANCO, | Case No.: 2:19-cv-01779-APG-BNW |
| Plaintiffs, | **Order Granting in Part Defendants' Motion for Summary Judgment** |
| v. | |
| LIBERTY INSURANCE CORPORATION and LIBERTY MUTUAL INSURANCE, | [ECF No. 32] |
| Defendants. | |

Plaintiffs Darlene Carter and David Bianco sue Liberty Insurance Corporation and Liberty Mutual Insurance (collectively, Liberty) for breach of contract, breach of the covenant of good faith and fair dealing, violations of Nevada's Unfair Claims Practices Act (UCPA), and negligence of agency.  Liberty issued a homeowner's insurance policy that covered weather damage done to the plaintiffs' home.  The plaintiffs contend that Liberty retained an incompetent repair contractor on their behalf who did more harm than good to their home.  They also allege that Liberty later substituted in a new contractor but refused to pay that contractor, causing it to cease work.  This prevented repair of the home, which caused more damage because the vulnerable home was subjected to additional weather damage.  Liberty moves for summary judgment on all claims and the plaintiffs oppose.

I grant Liberty's motion for summary judgment in part.  As a matter of law, Liberty did not breach the insurance policy with respect to the plaintiffs' 2016 insurance claim. Furthermore, the plaintiffs offer no evidence of: bad faith; violations of UCPA sections 686A.310(1)(e), (g), or (l); or agency relationships or related negligence.  However, genuine factual disputes exist regarding whether Liberty breached the contract with respect to the

plaintiffs' 2017 insurance claim and whether Liberty is liable under UCPA sections 686A.310(1)(b) and (f).

## I. BACKGROUND

On April 30, 2016, inclement weather damaged the plaintiffs' home in Las Vegas. ECF No. 32-14 at 13. Roof tiles were dislodged and broken, and water leaked through windows, skylights, lighting fixtures, and the damaged portions of the roof. *Id.* The plaintiffs insured the home through Liberty, which accepted the plaintiffs' weather-damage claim (the 2016 claim) under the policy. *Id.*

DALLASWHITE Property Restoration (DW) received work authorization to begin repairing the plaintiffs' home on July 6, 2016. ECF No. 32-7 at 2-3. The parties dispute how DW was hired. The plaintiffs contend that Liberty "referred [DW] through . . . their third-party agent, Innovation Group," and that they "didn't have a choice on the matter." ECF No. 33 at 74, 80. Liberty contends that while Innovation Group referred DW to the plaintiffs, neither Liberty nor Innovation Group required the plaintiffs to use DW. ECF Nos. 32-5 at 4; 32-1 at 3; 33 at 116. Liberty argues that the final decision to hire a particular contractor fell to the plaintiffs, as partially evidenced by their sole approval of work authorization agreements. ECF Nos. 32-1 at 3; 32-7 at 2-3; 32-9 at 2-3.

DW's work on the plaintiffs' home was inadequate, possibly leaving the home in a worse condition than when it began repairs. ECF Nos. 32-1 at 7; 32-14 at 13; 33 at 55, 92. A second storm in March 2017 caused additional damage to the home. ECF No. 32-14 at 14. At that point, the home was more vulnerable to the storm because of the inadequate and incomplete nature of DW's repairs. *Id.*; ECF No. 32-16 at 4.

The plaintiffs filed a second claim with Liberty seeking compensation for the additional damages caused by the second storm (the 2017 claim). ECF No. 33 at 81-82. Liberty denied this claim because the plaintiffs' policy excludes coverage for losses caused by "[f]aulty, inadequate, or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, [or] . . . [m]aintenance," and the disputed damage appeared to have resulted from deterioration "over a period of time, improper installation, construction, or workmanship[,] or wear and tear." ECF Nos. 32-6 at 14; 32-13 at 2. Liberty contends that the second round of damage to the home "was caused as a result of the failure of the former contractor to perform." ECF No. 32-14 at 14. The plaintiffs disagree with Liberty's cause-of-damage theory, instead contending that the "major wind event" of the second storm contributed to at least some of the damage, so Liberty should have approved the second claim. ECF No. 33 at 51.

Despite the disagreement regarding the 2017 claim, and after the plaintiffs brought DW's repair failures to Liberty's attention, Belfor Property Restoration (Belfor) was hired to replace DW. ECF No. 32-14 at 14. Belfor received work authorization on June 20, 2017. ECF No. 32-9 at 3. As with DW, the plaintiffs impute the decision to hire Belfor to Liberty, while Liberty maintains that Belfor was recommended to the plaintiffs by Innovation Group and that the ultimate responsibility of contractor hiring resides with the plaintiffs. ECF Nos. 33 at 98-99, 116; 32-9 at 2-3. Belfor began repairs but abandoned the project when it stopped receiving payment for its services. ECF No. 33 at 52.

The parties agree that Liberty paid the plaintiffs the sum owed under the approved 2016 claim. They dispute whether the plaintiffs are entitled to additional money in the wake of contractor failures and the related 2017 claim.

The plaintiffs sued Liberty in state court in 2019 and Liberty removed. ECF Nos. 1-1 at 2; 1 at 5. In the complaint, the plaintiffs allege that (1) Liberty breached the plaintiffs' insurance policy by failing to adjust the 2016 claim to account for contractor failures and by denying their 2017 claim following the second storm; (2) Liberty breached in bad faith; (3) Liberty's conduct amounts to violations of sections (1)(b), (e), (f), (g), and (l) of the UCPA; and (4) Liberty acted negligently while fulfilling a role in one or more agency relationships. Liberty moves for summary judgment.

## II. ANALYSIS

Summary judgment is proper where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The moving party bears the initial burden of informing the court of the basis of its motion and the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the moving party can meet its initial burden by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

Once the moving party carries its burden, the non-moving party must "make a showing sufficient to establish the existence of [the disputed] element to that party's case." *Celotex*, 477 U.S. at 322. I view the evidence and reasonable inferences in the light most favorable to the

non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A.     Breach of Contract

#### 1.  2016 claim

Under Nevada law, "[a] claim for breach of contract requires the plaintiff to demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach." *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009) (citation omitted).  Insurance policies "should be read as a whole, and [their] language should be analyzed from the perspective of one untrained in law or in the insurance business." *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011) (simplified).  Terms should be interpreted according to their plain meaning and ambiguities must be "construed against the insurer, because the insurer was the drafter of the policy." *Id.*  Whether a term is ambiguous "depends on whether it creates reasonable expectations of coverage as drafted," given the policy as a whole. *Id.* (simplified).

The plaintiffs point to no language in the policy from which an insured could reasonably expect coverage of inadequate work performed by contractors in the wake of an approved claim. Liberty's obligation under the contract is to "adjust all losses with" the insured, and to submit payment for those losses to the insured "60 days after" the insured provides proof of losses and an agreement is reached between the parties. ECF No 32-6 at 16.  The plaintiffs do not reference any provision of the policy to support the contention that Liberty must provide coverage for continued losses resulting from inadequate work performed for which Liberty paid in relation to the original loss.

Nor do the plaintiffs point to policy language that imposes liability on Liberty for faulty contractor performance.  Liberty paid in full the adjusted loss agreed upon for the approved 2016 claim.  Liberty's contract performance for the 2016 claim is therefore complete under the policy's terms.

The plaintiffs similarly have not rebutted the argument that the policy exclusion for "[f]aulty, inadequate, or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, . . . [and] [m]aintenance" does not apply here. ECF No. 32-6 at 14.  While the plaintiffs contend this exclusion applies only to "original claims," no such qualifier exists in the exclusion, and the plaintiffs offer no evidence substantiating that argument. The exclusion is unambiguous and would not create a reasonable expectation of coverage for losses caused by defective repairs, regardless of whether the defective repairs arose before or after a covered claim.  Consequently, I grant Liberty's motion for summary judgment and find that Liberty did not breach the policy in its resolution of the plaintiffs' 2016 claim.

### 2.  2017 claim

Under Nevada law, where "covered and noncovered perils contribute to a loss, the peril that set in motion the chain of events leading to the loss[,] or the predominating cause[,] is deemed the efficient proximate cause . . . of the loss" for policy liability purposes. *Fourth St. Place*, 270 P.3d at 1243-44. (simplified).  "Generally, this determination is left to the trier of fact" unless there is no genuine factual dispute. *Id.*

There is a genuine dispute about the efficient proximate cause of the damages to the plaintiffs' home following the 2017 storm.  Liberty argues that faulty workmanship was the sole cause of the additional damage.  The plaintiffs acknowledge that faulty workmanship played a role, but they contend that wind damage, which is a covered risk under their policy,

independently contributed to the damages. ECF No. 33 at 51, 126. A jury must determine whether faulty workmanship or wind was the efficient proximate cause of the damages claimed in 2017. I therefore deny Liberty's motion for summary judgment with respect to whether Liberty breached the policy when it denied the plaintiffs' 2017 claim.

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Breach of the implied covenant of good faith and fair dealing "is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guar. Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923-24 (Nev. 1991).

There is no genuine dispute that Liberty's conduct in response to the 2016 claim was reasonable and complied with its obligations under the policy. Liberty accepted the plaintiffs' claim and paid the adjusted loss in full. Similarly, no reasonable jury could find that Liberty's denial of the 2017 claim was unreasonable. Liberty denied coverage based on the conclusion that contractor error was predominantly, if not entirely, to blame for the storm damages in 2017. The plaintiffs provide no evidence of an ulterior motive. Although the parties now dispute the efficient proximate cause of the 2017 damages, both parties offer evidence that contractor error played a major role. ECF Nos. 33 at 44, 54; 32-16 at 3-4. Because the parties agree that contractor error contributed to the 2017 damages, no reasonable jury could find that Liberty's decision to deny the claim was unreasonable or that Liberty knew its decision was unreasonable.

Likewise, no reasonable jury could find that Liberty's conduct in 2016 and 2017 countervened the intention and spirit of the contract. The policy's purpose was to obligate Liberty to pay the plaintiffs' adjusted losses resulting from covered risks, and Liberty's conduct in response to both claims was consistent with that purpose. It accepted liability and paid the adjusted losses resulting from the 2016 storm. The policy did not require it to expand payment obligations under the 2016 claim. Finally, it was not unreasonable for it to deny the 2017 claim on the basis that an excluded risk caused the harm. The plaintiffs provide insufficient evidence to genuinely dispute these facts. I therefore grant Liberty's motion for summary judgment and find that Liberty did not breach the implied covenant of good faith and fair dealing.

**C.     Violations of the UCPA**

Under the UCPA, certain insurer activities constitute unfair practices. Nev. Rev. Stat. (NRS) § 686A.310(1). Those relevant here include:

> (b) [f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies[,] . . .
> (e) [f]ailing to effectuate prompt, fair[,] and equitable settlements of claims in which liability of the insurer has become reasonably clear[,] . . .
> (f) [c]ompelling insureds to institute litigation to recover amounts due . . . by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[,] . . .
> (g) [a]ttempting to settle a claim . . . for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application[, and] . . .
> (l) [f]ailing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

*Id.* §§ 686A.310(1)(b), (e)-(g) & (l).

/ / / /

/ / / /

### 1. NRS § 686A.310(1)(b)

Genuine disputes remain over whether Liberty acted reasonably promptly upon communications with respect to claims arising under the policy. For example, the plaintiffs did not receive the letter confirming the denial of their spring 2017 claim until August 2018. ECF No. 32-13 at 2. The parties provide me with little detail regarding their interactions with one another. But viewing the evidence in a light most favorable to the plaintiffs, there is a genuine dispute as to Liberty's promptness. I deny Liberty's motion for summary judgment with respect to the alleged violation of NRS § 686A.310(1)(b).

### 2. NRS § 686A.310(1)(e)

Liberty effectuated prompt, fair, and equitable settlement of claims in which its liability had become reasonably clear. The plaintiffs contend that Liberty failed to expand its liability to include contractor inadequacy after paying the 2016 claim. But no reasonable jury could find that Liberty's liability for such an expansion ever became reasonably clear given the policy's language and exclusions. Likewise, because of the genuine dispute regarding the efficient proximate cause of the additional damages in 2017, no reasonable jury could find that Liberty's liability for the 2017 claim ever became reasonably clear. I grant Liberty's motion for summary judgment with respect to the alleged violation of NRS § 686A.310(1)(e).

### 3. NRS § 686A.310(1)(f)

Summary judgment on the plaintiffs' claim under NRS § 686A.310(1)(f) would be premature. Liberty compelled the plaintiffs to institute litigation to recover amounts to which they believe they are entitled. However, it is unknown whether the adjusted loss that Liberty paid for the first claim and its refusal to pay the second claim amount to a recovery substantially less than the amount the plaintiffs will ultimately recover in this action. The plaintiffs must first

recover in this action before it can be determined whether Liberty offered substantially less than that recovery. I deny Liberty's motion for summary judgment with respect to the alleged violation of NRS § 686A.310(1)(f).

### 4. NRS § 686A.310(1)(g)

The plaintiffs do not adequately support the alleged violation of NRS § 686A.310(1)(g). They provide no evidence of amounts to which they believed themselves entitled based on written or printed advertising materials that accompanied, or were incorporated into, their application. I grant Liberty's motion for summary judgment with respect to the alleged violation of NRS § 686A.310(1)(g).

### 5. NRS § 686A.310(1)(l)

The plaintiffs do not offer evidence to substantiate the alleged violation of NRS § 686A.310(1)(l) because they provide no evidence that Liberty refused to settle some claims promptly in an attempt to influence settlement of other claims under other policy provisions. I grant Liberty's motion for summary judgment with respect to the alleged violation of NRS § 686A.310(1)(l).

### D. Negligence of Agency

An agency relationship exists where "the principal possesses the right to control the agent's conduct." *Hunter Mining Lab'ys, Inc. v. Mgmt. Assistance, Inc.*, 763 P.2d 350, 352 (Nev. 1988) (citation omitted). Negligence requires a showing that "(1) the defendant owed a duty of care to the plaintiff[s]; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff[s'] injur[ies]; and (4) the plaintiff[s] suffered damages." *Scialabba v. Brandise Constr. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996) (citation omitted).

The plaintiffs inconsistently portray the alleged agency relationship. In the complaint, they allege that "[t]here existed an agency relationship between [Liberty] and each of the contractors." ECF No. 1-1 at 8. In their briefing on this motion, the plaintiffs contend that Liberty "acted as agent of the [p]laintiffs." ECF No. 33 at 27. Regardless, the plaintiffs provide no evidence that a principal-agent relationship existed in either context.

The plaintiffs provide no evidence that their policy designates the obligation to hire contractors to Liberty. Liberty was not a named party to the work authorization agreements between the plaintiffs and contractors. The plaintiffs provide no evidence that they may direct Liberty's conduct in any capacity, nor vice-versa. Nothing in the policy provides that the plaintiffs have the right to control Liberty's conduct and nothing in the work authorizations provides that Liberty has the right to control the contractors' conduct. The plaintiffs have failed to show a genuine dispute that an agency relationship existed. They likewise have failed to show that Liberty owed a duty arising from any alleged agency relationship. And they provide no evidence of negligence in the handling of the claims or in the contractor referral process. I grant Liberty's motion for summary judgment with respect to the plaintiffs' negligence of agency claim.

### III. <u>CONCLUSION</u>

I THEREFORE ORDER that defendant Liberty Insurance Corporation's motion for summary judgment **(ECF No. 32) is GRANTED in part**. Liberty is entitled to judgment in its favor on the plaintiffs' claims of: breach of contract relating only to the 2016 claim; breach of

/ / / /

/ / / /

/ / / /

the implied covenant of good faith and fair dealing; violation of UCPA sections 686A.310(1)(e), (g), and (l); and negligence of agency.  Because some of plaintiffs' claims remain for trial, entry of final judgment is not appropriate at this time.

DATED this 12th day of January, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE